NCHMD. Okay. Council. Mr. Dabdoub. Good morning. Good morning. May it please the court, Edward Dabdoub, appearing on behalf of plaintiff appellant Reniero Gimeno. We've ceded five minutes of our time to the Department of Labor, reserving two minutes for rebuttal. This appeal is about the availability of equitable remedies under the Employee Retirement Income Security Act, ERISA. The only question before this court is whether under Section 502A3 of ERISA, the equitable remedy of surcharge is available to a beneficiary of a benefit plan against a fiduciary for breaches of fiduciary duties. Because the Supreme Court and six circuit courts that answered this question have unequivocally said yes, the district court clearly erred when it found that the monetary relief Gimeno sought in his complaint was compensatory in nature and could not be equitable. Now, the core allegation in the complaint which we take as true are that the defendants breached their fiduciary duties by failing to properly enroll Dr. Polga, the plan participant, in the life insurance plan. He had elected supplemental life insurance, and he was not properly enrolled because of the actions or inactions of the defendants who were fiduciaries. Can I ask you a quick question about the defendants being fiduciaries? The defendants argue that you didn't allege sufficient facts to make them fiduciaries in the complaint, and one question I have for you is just are they wrong about that? Did you allege that they were fiduciaries? It was alleged in the complaint that both defendants were fiduciaries either by being named in the plan documents that were available or de facto fiduciaries because of their actions. A fiduciary analysis doesn't start and end with whether the plan documents name the fiduciary, but instead under 11th Circuit law, we have de facto fiduciaries where the court will look to see if the actions of the individual were fiduciary functions, and the complaint is sufficiently pled as to that point. With respect to fiduciaries as in fact, what did you allege as to them being fiduciaries in fact? The facts were that it is a fiduciary function to enroll a plan participant in a benefit plan. And the allegations in the complaint were that the defendants were responsible for enrolling Dr. Polga by providing him with the paperwork necessary for enrollment, following up with him when paperwork wasn't completed properly, and collecting premiums to pass on to the insurance company that funded the life insurance plan. So the plan itself is a trust, right? And the plan fiduciary is a trustee. That's your position, right? Indeed, under the law of ERISA, that's how the courts treat the plan and the fiduciary. And so we have under Section 502A3, the Congress has allowed participants or beneficiaries of a benefit plan to bring a civil action for appropriate equitable relief for violations of the statute or to enforce terms of the plan. I just want to be clear for a moment here that this case is not a close call. There was clear error by the district court when the court placed complete reliance on a single case, the Ninth Circuit pitch-off case handed down in 2009. Two years after pitch-off, we had the Supreme Court deciding Cigna versus Amaro. The Amaro case is instructive. The court directly and thoroughly addressed the availability of equitable remedies against breach in fiduciaries. And I should just emphasize that the court specifically identified surcharge as one such remedy against a breach in fiduciary. And importantly, the Supreme Court addressed the wrong belief that this district court harbored that if it is monetary payments you're after, it could not be equitable. I want to just quote the Supreme Court here. The court said, the fact that this relief takes the form of money payment does not remove it from the category of traditionally equitable relief. That one sentence emphasizes where the district court got this wrong. But beyond Amaro, after Amaro we saw a sea change in the circuits. Six circuits were faced with the exact issue before this court right now. All six held that surcharge is indeed a remedy under Section A3 of the statute. But nowhere in the district court's order is there any mention of these six circuit cases, which were post-Amaro. Instead, the court thought it relied on one pre-Amaro case. And I think particularly instructive to us here is the Silva decision from the Eighth Circuit in 2014, which essentially reversed Pitchoff in light of Amaro. The Silva case is identical in terms of facts and the procedural history to this case. Quite literally the same case. The district court in Silva, like the district court here, wrongly relied on Pitchoff to deny leave to amend the complaint to change the statutory basis from A1B to A3. Now the Eighth Circuit revisited their ruling in Pitchoff in Silva and determined in light of Amaro the legal landscape had changed. Applying Amaro, the Silva court then remanded to the district court to allow that plaintiff to amend the complaint to plead his breach of fiduciary claims under Section A3. And we put to the court that is precisely what should happen here. Your client does not have a cause of action under 1132A1B for breach of fiduciary duty and you're not seeking relief under that, right? Against these defendants with these allegations, the only statutory basis would be under A3 because A1B is akin to a breach of contract case. This is breach of fiduciary duty and you're not seeking relief against these defendants under A1B, right? Correct. And I would just ask the court to contemplate for a moment the ramifications of affirming the district court's ruling. Essentially a risk of fiduciaries could commit the most flagrant violations of breaches of fiduciary duties. It could significantly harm plaintiff beneficiaries and participants in a way that only monetary payments could compensate for such harm. Yet based on the district court ruling, there is no redress available for such a harm. ERISA is a vast statute as the court is aware. Employee benefits don't start and end with life insurance. This could implicate health insurance, pension plans, just about any type of employee benefits. And if I could wrap up by just saying that the Supreme Court has emphasized that equity suffers. Not a right without a remedy. We ask for reversal and remand. You saved two minutes for rebuttal. Mr. Mariscal. So surprising that everyone but the law clerks leave the courtroom when we have an ERISA case. Oh, it's just that it's the last one. We're here too, so. We always are. I do hope you stick around, Your Honors, for at least five minutes, but at least ten for the other side as well. Good morning, Your Honors, and may it please the court. Isidro Mariscal for the Secretary of Labor. As amicus supporting appellant, this court should reverse the district court's holding below and hold that ERISA section 50283 allows beneficiaries like Jimeno to seek monetary remedies under equitable theories such as surcharge against planned fiduciaries for violating their fiduciary duties. And I'll just say that this court should reverse for three reasons. First, the district court's ruling below, as my friend Mr. Duboud has ably explained, is contrary to the Supreme Court's decision in Signa Corte V. Amara. Second, the district court's ruling below is contrary to decisions in every other court of appeals that has addressed this issue since Amara was decided. Is the complaint adequate to allege breach of fiduciary duty? Your Honor, that's not something that the Secretary has briefed in this case, but I will point to . . . I assume you've looked at it, though, at the pleading and have some perspective about that, but maybe you don't. Yes, Your Honor. Yes, we did look at the pleadings. I would point, Your Honors, to very similar cases under very similar circumstances that have been decided in other courts of appeals, and in particular, the Silva case in Eighth Circuit is very much on all fours in terms of that. At the very least, would it be fair to say that your position would be that it would not necessarily be futile to allow another amendment of the complaint, which is what the district court had found? That's correct, Your Honor. The futility of Mr. Jimeno's complaint down below, I believe, was not adequately established by the district court's decision, and in terms of whether he pleaded sufficient facts to state a fiduciary breach claim, I believe the complaint would not be futile on that basis as well. NCHMD is the administrator of the plan? Is that right, or is it not right? I believe NCH Healthcare Systems is the plan administrator under the plan, and NCHMD was Mr. Polga's employer, if I'm correct. But the employer can be a fiduciary for these purposes? That's correct. An employer can be a fiduciary based on the functions that it takes on with respect to the plan. If the employer provides him with the onboarding documents and instructs him to return those documents, helps him complete the forms, he elects life insurance, and the employer says, you're enrolled, deducts the amount, he pays for it, all of those are fiduciary responsibilities. That's correct, Your Honor, and that's precisely what the Eighth Circuit in Silva found with respect to the employer's misrepresentations and omissions that occurred in that case, which are very similar to what happened here below with respect to Mr. Polga. And I'll also point the court to Appellant's reply brief on pages 12 through 13, which ably responds to the arguments that there were not sufficient facts pled with respect to NCHMD's fiduciary status. I'll also point to the court that reversing the district court's decision here would not disturb any of this court's precedent regarding benefits claims and fiduciary breach claims for ERISA-covered plans. Unlike the circumstances that other courts of appeals faced after Amara, where there was a direct authority in those courts of appeals regarding the availability of equitable relief under 50283. Here in the Eleventh Circuit, this court has not spoken directly to this issue since Amara was decided, so this would present the court a good vehicle to explain the expanded basis for equitable relief under Section 50203 in light of Amara. And for those reasons and the reasons in our brief, we urge this court's reversal. Thank you, Your Honors. Thank you. Mr. Graybell? Good morning. May it please the court. My name is Matthew Graybell, and I represent the appellees NCH Healthcare and NCHMD in this case, which I will jointly refer to throughout this argument as NCH Healthcare. One point I wanted to make first, as my friends on the other side were discussing, the plan is not a trusted plan. This is not a self-funded plan, as we call it in the benefits world. This is a fully insured plan where the insurer, Lincoln National, pays the benefits, decides claims for benefits, and the employer basically acts as a conduit to get employees a better group rate for what are optional benefits. So this isn't like self-funded welfare benefits or self-funded retirement benefits. The district court's decision to dismiss Mr. Gimeno's first amended complaint and deny his motion to file a second amended complaint should be affirmed for one primary reason. Specifically, as the district court correctly held, what Mr. Gimeno has always sought in this case is the payment of supplemental life insurance benefits that he believes the insurer wrongfully denied him. Notwithstanding what my friends on the other side have argued, the issue in this appeal should focus solely on the text of the statute. Congress drafted ERISA Section 502A3 to only provide appropriate equitable relief, which is made clear in the text. Yeah, but isn't surcharge an equitable remedy that's available under ERISA? Surcharge is equitable by itself, but it's not a limitless section of the statute. Appropriate and equitable are two important modifiers. Surcharge in and of itself provides monetary damages for a breach of legal duty. In Great West Life Insurance v. Knudsen, the court held specifically that monetary damages for a breach of legal duty are unavailable under 502A3. Plaintiff says this is about a breach of fiduciary duty. Surcharge is an equitable remedy. The Supreme Court has said that it's available in that context. Doesn't this need to go back? I disagree, Your Honor, because the discussion of surcharge from Cigna v. Amara is purely dicta. As Justice Scalia said, it's concurrent. Let's say it is. It's Supreme Court dicta. And I understand Supreme Court dicta is important and needs to be discussed and followed. But in this situation, it is met with contrary precedent, which makes it impossible to apply Amara's outcome. Six different circuits have concluded that dicta supports the conclusion that equitable remedies can be had in these types of situations. For surcharge. And I'd say a couple things to that. One, I do agree that six other circuits have considered this and said that's the case. The Sixth Circuit in a footnote in Rorschach v. Life Insurance of North America said that the discussion of surcharge in A3 was merely dicta. And the court didn't decide what remedies were available in that case. So while they did . . . Persuasive dicta, though, right? And Sixth Circuit seemed to have concluded that even assuming it's dicta . . . And, I mean, it's said to be dicta in one of the dissents, whether it's dicta or not. And I agree that other circuits have found that. But it's impossible to get to the outcome of Amara without essentially this court recognizing that Knudsen was overruled by the dicta in Amara. Because Knudsen specifically said, the court said, Almost invariably, suits seeking to compel the defendant to pay a sum of money to the plaintiffs are suits for money damages. As that phrase has traditionally been applied. Since they seek no more than compensation for loss resulting from the defendant's breach of legal duty. That is surcharge. Surcharge is compensation for . . . Yeah, but what Amara said is, look, look. Yeah, we've talked about monetary damages and compensatory damages. But those statements were made in the context of non-fiduciary defendants. I understand that, but then there'd be no point in . . . And that fact, it said, makes a critical difference. It makes a critical difference, but it's still . . . The statement from Knudsen talks about monetary damages for the breach of a legal duty. But let's just assume we didn't have the case, the dicta case. I mean, there's all sorts of money exchanging hands in equity, right? I mean, there's restitution. There's all sorts of equitable remedies that involve money changing hands. Condemnity, money had and received. It just can't possibly be the case that just all of that is thrown out. I 100% agree. I'm not saying those remedies aren't available here. For example, the . . . Well, what makes surcharge different than those remedies such that surcharge is one that's barred by this language and those remedies wouldn't be? Because, for example, in Knudsen, the Supreme Court looked at the difference between equitable restitution and legal restitution under the guise of a benefit plan like this. Equitable restitution required tracing the tainted property back to the defendant. That tainted property here that Mr. Gimeno believes he's entitled to is still held by the insurer. They're the ones that have gained a net benefit by not paying anything to Mr. Gimeno. My client doesn't pay benefits in this case. They're not holding anything. They have refunded the premiums that were wrongfully withheld from his paycheck. That's the tainted property that traces back to my clients. But the problem is that the doctor here was relying on your client. These are the allegations. He was relying on your client as the fiduciary to enroll him. And so he forewent the ability to enroll in other types of life insurance because he thought he was already covered. But he was covered. He received $150,000. He thought he was covered for $500,000. And he did think he was covered for $500,000. And your client told him he was. And not only that . . . My client did tell him. The paperwork that they sent him for re-enrollment said that you are currently enrolled in a $500,000 coverage for life insurance. I mean, that's what the paperwork shows. Paperwork provided by the insurer to my client that then provides it to the employee. In a fully insured case like this, everything comes basically from . . . He got it from whom? It's handed to him by my client. By your client. Yes. But that paperwork . . . For example, the form that Mr. Gimeno's husband prepared says on it multiple times, you must submit EOI to us. You must submit EOI to us. It says it three times in bold. You must submit EOI to us. To us being Lincoln National, the insurance company. It doesn't say you must provide it to NCH Healthcare. It doesn't say you must provide it to NCHMD. It says you must provide us EOI. But your position is, as his employer, that you had no responsibility when you were onboarding him and telling him you were providing him with the ability to enroll in life insurance and you were giving him all the paperwork to actually provide all the paperwork. I'm not saying there's no responsibility, but I'm saying the responsibility is limited by the virtue of this type of plan. Because holding employers liable for all of these actions, that an insurer essentially is the one that handles everything on, would have a slippery slope type effect. I mean, ERISA was drafted to serve basically two important goals, right? One is to provide employees benefits and the other is to incentivize employers to provide benefits in the first place. Certain benefits like health insurance for applicable large employers is required to be provided by the Affordable Care Act. But benefits like this, like the supplemental life insurance benefits in this case, are completely optional. Not every employee at NCH Healthcare has to get them. It's a completely optional service that's being provided by my client to contract with the insurance company to basically allow for this individual to enroll in insurance, in supplemental life insurance at a better rate than he would if he went out individually. So, if surcharges allow it to basically provide benefits from an employer that doesn't pay benefits, it would essentially render the distinction between 502A1B and 502A3 meaningless. I mean, they're both essentially a mechanism to just go get a payment for benefits that's different from restitution or equitably stopping the insurer from denying the claim. It essentially is just saying you can go get benefits this way. Every case will allege them both in tandem and see which one survives basically. Let me ask you how you understand the district court's decision here. Is the district court in this case saying that there is, I'll put this, that surcharge is not a possibility under the statute? Or is the district court saying that surcharge is not the appropriate equitable remedy under the statute? Because I see you as sort of arguing kind of back and forth between the two. You're sort of arguing a little bit that maybe there's some other equitable remedy that was correct and not surcharge. But I kind of see the district court as just saying that we're not even going to get there and we're going to say surcharge is not even a possibility. I do think the district court's saying surcharge. Well, surcharge wasn't brought up in the pleadings, first of all. So, I mean, it wasn't brought up until this appeal. It was, this appeal is the first time that Mr. Gimeno, who was represented by a different counsel before Mr. Daboob, they never mentioned surcharge once throughout the three iterations of complaints we were at before until finally seeking it on the proposed second amended complaint. So in the decision in front of the district court on the pending motion dismissed, I believe that the court was saying that surcharge is not available and I do not think surcharge is an equitable remedy available regardless of it being an equitable remedy because the court has said that it's not an equitable remedy. So, I'm sorry, just to make sure I understand your position. Are you then, is it your position that what you have referred to as the dicta in Amara is just wrong? Yes. As Justice Scalia said in his concurrence, it's dicta binding upon neither the district court nor the Supreme Court. And he even said in his concurrence, if the district court was And we would have to reach that same conclusion if we were to agree with you. Right? I mean, because the district court didn't address Amara at all, right? Yes. So, you would be asking us to find that although it's been said, possibly in dicta, by a majority of the court that we think it's wrong. That's correct, Your Honor. Let's just assume we were willing to do that. Why would surcharge, I guess go back to a question I asked before, why would surcharge be the one equitable remedy that is not available, even though others such as restitution and things like that would be? Yeah, I can address that. So, in Mertens, for example, when the Supreme Court started this analysis, they said, and Newton has said this also, 50283, the words appropriate equitable relief and 50283 were not intended to provide all relief that a court of equity could provide because such remedies could include legal relief. That has been said multiple times by the Supreme Court. So, they limited the types of equitable relief that were available under A3 to injunction mandamus and restitution. That was the traditional approach. That's still the precedent that outweighs the Amara from dicta. That's what Peshoff, the 8th Circuit considered in Peshoff and made their decision on, and that's still the precedent that completely contradicts the dicta from Amara, and that's what we're basing our argument on. So, you're not saying that surcharge is legal in nature. You're saying that it doesn't fit the three categories that the Supreme Court identified in that other case. Yes, Your Honor. Okay. All right. Another reason why surcharge in a case like this shouldn't be applied to Mr. Gimeno is because ERISA was a carefully articulated statute with six specific forms of relief, right? 502A1B allows a plaintiff to seek the payment of benefits or clarify the right to the payment of benefits without regard to what type of relief is provided. 502A2 allows a plaintiff to seek redress for a breach of fiduciary duty to recoup plan losses. 502A3 specifically provides for appropriate and equitable relief. Both modifiers are important here. Other appropriate equitable relief. Yes, Your Honor. Thank you for correcting me on that. Other appropriate equitable relief. But the two most important modifiers, appropriate and equitable, I think a lot of times the appropriate gets left out of the conversation. The appropriate should look at the type of plan at issue. Again, if we're talking about a fully insured plan like this or a self-funded plan, because that's where a lot of times these cases can... If Mr. Gimeno was suing the life insurer, Lincoln National, he could proceed under 502A3 to seek the same damages he's seeking against my client under the theory of equitable restitution. They're holding those benefits he believes he's entitled to and he has not disputed that he's seeking the payment of benefits. That's essentially what my argument boils down to. And I see my time is coming to a close, so I will conclude. There's just simply no way to reconcile the dicta in Amara regarding surcharge with Knudsen's rule that money damages for a breach of legal duty is unavailable under A3, because that's exactly what surcharge allows for. It allows for money damages for a breach of legal duty. To reconcile those two rules would have required that Amara overrule Knudsen, but it did not and Amara was solely dicta. Because the district court's decision here is in line with the Supreme Court decisions in Knudsen and Mertens, it applied the statute correctly and should be affirmed. Thank you. Good afternoon. I want to read one sentence from the Amara court that should address the arguments made by the defendant. And the court said, thus, insofar as an award of make whole relief is concerned, referring to surcharge, the fact that the defendant in this case, unlike the defendant in Mertens, the case they're placing heavy reliance on, is analogous to a trustee makes a critical difference. That's it. The Supreme Court addressed it. I want to also address the claim that our client is essentially seeking life insurance benefits. Based on the allegations in the complaint, he's not eligible for life insurance benefits. This is not the typical ERISA A1B claim denial that the court sees. This is a denial based only on our client's spouse not being insured in the first place. If you're not insured, you're not eligible for benefits. It's that simple. And I just wanted to address that because I feel there is some muddying of the A1B, A3, and it couldn't be more clear that based on the allegations, the four corners of this complaint, the only avenue is under A3. I should also address that the complaint was not dismissed because the correct equitable remedy wasn't played, namely surcharge, right? The district court's order says there is no remedy. It's futile. And that came from the pitch-off case, and that's the argument the defendants made as well. So I see I'm out of time, and I'd like to thank the court. Thank you. We are in recess until tomorrow.